**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PATRICIA JAMES, | ) | NO. EDCV 11-01471-SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

Patricia James ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on April 30, 2007. (Administrative Record ("AR") 14, 56-57). She alleged a disability onset date of April 24, 2007 (AR 14, 107), for arthritis, a left arm injury, and depression. (AR 106-07).

The Agency denied Plaintiff's application initially on October 9, 2007, and on reconsideration on December 20, 2007. (AR 58-62, 66-70). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Lowell Fortune on March 20, 2009. (AR 22). Plaintiff appeared with counsel and testified at the hearing. (AR 22-55).

On September 9, 2009, the ALJ issued a decision denying benefits. (AR 14-21). Plaintiff sought review of the ALJ's decision before the Appeals Council (AR 9-10), which denied her request on July 19, 2011. (AR 1-4). Plaintiff commenced the instant action on September 19, 2011.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on August 21, 1961, and was forty-seven years old at the time of the hearing. (AR 26). She has a twelfth-grade education, and speaks, reads, and writes English. (AR 48, 106, 110). Plaintiff's past work experience has been as a janitor. (AR 107-08).

2

A.     **Plaintiff's Medical History**

Plaintiff arrived at the emergency room of Arrowhead Regional Medical Center ("ARMC") on June 11, 2007, complaining of back and hip pain. (See AR 134-36). X-rays of her lumbar spine and right hip were normal. (AR 207). She was diagnosed with sciatica, a condition that usually "improves greatly with conservative treatment." (AR 135).

On January 8, 2008, Plaintiff was assessed by Drs. Miulli and Panchal in the Neurosurgery Clinic at ARMC. (AR 202-03). They noted Plaintiff's "chief complaint of lower back pain" and performed a physical and neurological examination. They also noted that an MRI showed "degenerative disk disease with mild central canal stenosis [at] L3 through 4" and "[d]egenerative disk disease and facet joint disease with moderate central canal and neural foraminal stenosis at L4 through 5." (AR 202; see AR 204-06). They diagnosed Plaintiff with "[r]ight L3 radiculitis with possible radiculopathy versus pain" and a "[p]soas spur." (AR 203). They recommended that Plaintiff see her primary care physician to begin treatment with Naprosyn and Robaxin, that Plaintiff receive nerve stimulation treatment, and that she receive physical therapy three times per week. (Id.).

Plaintiff underwent an outpatient physical therapy evaluation at ARMC that day (January 8, 2008). (AR 197-98). Plaintiff complained of pain in her back and was found to have "limited and painful" rotation of her hips and limited range of motion in her lumbar spine. (AR 197). The physical therapist believed Plaintiff's "rehab potential" was fair and that a limiting factor was her compliance. (AR 198).

A medical report completed by N. Pham at the San Bernardino Transitional Assistance Department on September 30, 2008, relayed that Plaintiff was temporarily incapacitated due to low back pain from September 30, 2008, through January 30, 2009. (AR 224). More tests were necessary "before the degree and permanence of the incapacity [could] be determined." (Id.). There do not appear to be any treatment notes accompanying this report.

Plaintiff was evaluated by Dr. Jothen on November 25, 2008. She was diagnosed with degenerative disk disease and herniated nucleus pulposus at L3-L4 and L4-L5. (AR 221). It was recommended that she receive an epidural facet joint block and follow up with her primary care physician for pain control. (Id.). Dr. Miulli recommended facet joint injections on January 6, 2009. (AR 220).

On February 5, 2009, Plaintiff was seen at ARMC for an "initial consultation for chronic pain." (AR 216-17). She was diagnosed with an "L4-L5 disk bulge with mild to moderate facet hypertrophy," "mild to moderate canal stenosis," "[b]ilateral neuroforaminal stenosis," and "[m]ultiple degenerative disk disease canal foraminal stenosis." (AR 217). Plaintiff was scheduled for epidural steroid injections, which she received on February 18, 2009 (AR 215), "[c]autioned on overuse of narcotics," and prescribed ibuprofen and Neurontin. (AR 217).

On February 24, 2009, a nurse practitioner at ARMC Rehabilitation Services evaluated Plaintiff for use of a front wheel walker. Plaintiff was noted to have an unsteady gait and bilateral lower extremity weakness. Plaintiff's goals were to increase strength and become

4

capable of independent ambulation. (AR 225). Plaintiff was prescribed a front wheel walker on April 9, 2009. (AR 227).

On January 21, 2011, Plaintiff underwent surgery at ARMC to excise an intervertebral disc (laminectomy).[1] Her principal diagnosis was "[d]isplacement of lumbar intervertebral disc without myelopathy." (AR 236, see 535-37). She also had L3-L4 and L4-L5 stenosis, and left L4-L5 radiculitis and radiculopathy with "failed nonoperative treatment in the past." (AR 535). The surgeons found that Plaintiff had "severe central canal and lateral foraminal stenosis at L3, L4 and L5," "severe degenerative disk disease," and that the "disk space was so small [they] could barely get [their] instruments into the disk space." (Id.). Plaintiff "did well" after her operation and "[a]ggressive physical therapy was sought." (AR 329). She was ambulating with a walker and assistance when she was discharged from the hospital on January 29, 2011. (AR 331; see AR 329).

**B.   Examining and Non-Examining Physicians**

Dr. William Boeck performed a consultative orthopedic examination on September 25, 2007. (AR 169-73). He noted that Plaintiff had "low back pain," "persistent hip pain," and multiple disc bulges. (AR 169). Plaintiff was currently taking Norco, Soma and Motrin for pain. (Id.). Plaintiff had a normal stance and walked evenly without a limp. (AR 170). She complained of pain to palpation around her lumbar spine.

---

[1] The Appeals Council made this evidence, generated almost two years after Plaintiff's hearing, part of the record. (AR 5-6).

5

(Id.). The range of motion in her back was limited. (AR 170, 173). Plaintiff "readily [came] to a seated position on the examining table" and there were "free motions in the cervical spine." (AR 171). Range of motion was normal in her shoulders, right elbow, and wrists. (Id.). Plaintiff was also able to "readily come[] to a recumbent position face up on the examining table," and the ranges of motion in her hips, knees, ankles, and feet were normal. (AR 172). She did have "marked tenderness" to palpation around her right hip. (Id.).

Dr. Boeck concluded that the only "positive findings" from his examinations were the limited motion in Plaintiff's lumbar spine, the "marked tenderness" around her right hip, "and an old deformity at the left elbow." (AR 173). He diagnosed Plaintiff with "accumulated changes" of the lumbar spine and bursitis of the right hip. (Id.). He opined that Plaintiff could "lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk 6 hours in an 8-hour day, [and] sit 6 hours in an 8-hour day." (Id.).

On October 4, 2007, medical consultant George G. Spellman reviewed Plaintiff's medical records and issued a Physical Residual Functional Capacity[2] ("RFC") Assessment. (AR 189-93). Dr. Spellman reported that Plaintiff could occasionally lift and/or carry fifty pounds, could frequently lift and/or carry twenty-five pounds, could stand, walk or sit for about six hours per eight hour work day, and had unlimited

---

[2] Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record." 20 C.F.R. §§ 404.1545(a), 416.945(a).

6

pushing and pulling abilities. (AR 190). Dr. Spellman further indicated that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AR 190-92). He believed Plaintiff's allegations were only "partially credible." (AR 193). Another non-examining physician agreed with Dr. Spellman's assessment. (AR 194-95).

Dr. Linda Smith performed a psychiatric consultative examination of Plaintiff on September 18, 2007. (AR 162-67). Dr. Smith diagnosed Plaintiff with "Depressive Disorder, Not Otherwise Specified," but concluded Plaintiff would not "be impaired to work from a psychiatric standpoint" and had no mental functional limitations. (AR 166-67). A State Agency physician reviewed the evidence and concluded Plaintiff did not have a severe psychiatric impairment. (AR 176-88).

**C.   Plaintiff's Testimony**

Before the ALJ, Plaintiff testified that she had back pain and that her spine was "twisted" and her discs were deteriorating. (AR 32-33). She felt "knots" in her back and "could barely move." (AR 37). She rated the level of pain at eight out of ten, and testified that she felt it constantly. (AR 38, 42). She took medications for the pain but they did not help. (AR 39, 42). She also stated that problems with her hip and elbow kept her from working. (AR 33, 40). In addition, Plaintiff was experiencing bilateral leg pain and sometimes had difficulty moving her legs. (AR 33, 40-41). She testified that it was difficult for her to sit, stand, or lay for very long. (AR 33, 43). Moreover, she was becoming depressed because "[t]he pain hurts so bad." (AR 34; see AR

44). Plaintiff had a tendency to lose her balance "four or five times a day" and began using a walker shortly before the hearing. (AR 29-30, 40). In addition, she had "[e]ight pain shots" in her spine the week before the hearing. (AR 41-42). She did no chores around the house and needed help taking a shower and getting dressed. (AR 45).

Plaintiff testified that she did about twenty hours per week of yard work for her boyfriend's company until April or May of 2007. (See AR 27-29). She was paid in cash and did not report her earnings to the IRS. (RT 28-29).

Plaintiff testified that she had tested positive for "codeine or cocaine" the month before the hearing. (AR 34-35). She then admitted that she used cocaine in February 2009, but denied using any illegal drugs in 2007 or 2008. (AR 36-37).

D.  **Third Party Report**

Charles Vance, Plaintiff's roommate and boyfriend, completed a "Function Report - Adult - Third Party." (AR 119-26). He wrote that Plaintiff spent her days eating, showering, watching television, taking medication, going on short walks, visiting neighbors, and taking naps, and that she spent most of the time resting on the couch. (AR 119). Plaintiff was able to do yard work, play with her grandchildren, and prepare home-cooked meals before she became disabled. (AR 120-21). She was "unable to lift" and could not "stand very long." (AR 121). She also had "trouble with [her] legs going out" and "need[ed] help getting up." (AR 123). Her disability interfered with numerous of her physical

8

abilities, and she could not walk very far before needing to rest. (AR 124). Vance's report largely echoed a "Function Report - Adult" completed by Plaintiff. (See AR 127-34).

## IV.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

---

[3] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

9

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d

at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

At the first step of the sequential evaluation process, the ALJ observed that Plaintiff "did work after the asserted onset date on a part-time basis." (AR 16). Plaintiff's earnings were "unclear," however, leaving no evidence that she had engaged in substantial gainful activity. (Id.). At step two, the ALJ found that Plaintiff had the severe impairments of "a lumbar spine disorder and a disorder of the right hip and left elbow." (Id.). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 17).

Next, the ALJ determined that Plaintiff had the RFC to perform light work with the limitations that she could occasionally balance, bend, stoop, crouch, kneel, crawl, and climb stairs or ramps, but could not climb ladders, ropes or scaffolds. (AR 17). At step four, the ALJ found that Plaintiff could not perform her past relevant work as a janitor.

(AR 20). At step five, the ALJ determined that Plaintiff could perform work as a cashier, mail clerk, or sewing machine operator. (AR 20-21). Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 21).

## VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

12

# VII.

# DISCUSSION

Plaintiff contends a reversal or remand is warranted because the ALJ committed two errors: (1) the ALJ did not properly consider Plaintiff's testimony (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo") at 4-8); and (2) the ALJ did not properly consider lay witness evidence. (Id. at 8-10). For the reasons discussed below, the Court disagrees with Plaintiff's contentions.

**A.   The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Complaints**

Plaintiff asserts that the ALJ failed to provide legally sufficient reasons for finding that Plaintiff's subjective complaints were not fully credible. (Complaint Memo at 4-8). The Court disagrees.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (internal quotation marks omitted). "The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). Second, if the claimant meets this first test, and there is no

evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

The ALJ cited no affirmative evidence that Plaintiff was malingering. (See AR 17-20). However, the ALJ determined that Plaintiff was "not fully credible." (AR 20). The ALJ provided a specific, clear and convincing reason[4] for rejecting Plaintiff's credibility: "her failure to comply with governmental laws, rules and regulations" by failing to report to the IRS the income from her part-time work for a lawn service. (Id.). At least one other court has found that a claimant's failure to report income to the IRS supports an ALJ's adverse credibility determination. See Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008). This Court agrees that Plaintiff's admitted failure to comply with the law (see AR 29) clearly and convincingly detracts from her credibility. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (noting that an ALJ may apply "ordinary techniques of credibility

---

[4] The ALJ also noted that several "credibility factors were particularly applicable: whether the person has a pecuniary interest in the outcome of the hearing or may otherwise be motivated by secondary gain; whether a person's evidence is inconsistent with or contradicted by prior statements or other evidence in the record; and the appearance and demeanor of a person as a witness at the hearing." (AR 19-20.) However, the ALJ offered no further explanation of the reasoning underlying these factors. (See id.). Accordingly, they do not suffice to support his rejection of Plaintiff's credibility. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (holding that an ALJ's credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that an ALJ's arguably invalid reason for discounting a claimant's credibility was harmless error because the ALJ provided other legitimate reasons to do so).

evaluation" such as considering whether a claimant has "been less than candid"). Accordingly, the ALJ did not err in rejecting Plaintiff's credibility, and Plaintiff's claim does not warrant remand.

**B.** **The ALJ's Failure To Expressly Consider Lay Witness Evidence Does Not Require Remand**

Plaintiff contends that the ALJ failed to properly consider the third party statement of Charles Vance. (Complaint Memo at 8-10). Although the ALJ erred by failing to expressly consider Vance's report, the Court concludes the error was harmless.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e). The ALJ may discount the testimony of lay witnesses only if he gives "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

If an ALJ fails to expressly consider lay witness testimony, the Court must determine whether the ALJ's decision remains legally valid despite such error. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). If the ALJ's ultimate credibility

15

determination and reasoning are adequately supported by substantial evidence in the record, no remand is required. Id. (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)); see Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012).

As Plaintiff notes, the ALJ failed to expressly evaluate Vance's report about Plaintiff's abilities.[5] However, Vance's statements essentially mirrored that of Plaintiff's own testimony and did not strengthen Plaintiff's disability claim. (Compare AR 119-26 with AR 32-34, 37-47, 127-34). Vance's report therefore did not provide any insight into Plaintiff's condition beyond Plaintiff's own testimony, which, as discussed above, the ALJ provided legally sufficient reasons to discredit. Accordingly, the ALJ's failure to discuss Vance's report was harmless error because it was inconsequential to the ultimate nondisability determination. See Molina, 674 F.3d at 1121-22 (holding that "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims" (brackets and internal quotation marks omitted)); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that an ALJ's clear and convincing reasons for discounting a claimant's testimony are equally germane to reject similar testimony by a lay witness). Thus, the Court "confidently conclude[s] that no reasonable ALJ, when fully crediting

---

[5] The ALJ stated that he "assessed the credibility of the evidence given by each person," and that the evidence included "pre-hearing statements or reports." (AR 19 & n.6). Even if the ALJ reviewed Vance's report, however, he erred by disregarding it without comment. See Lewis, 236 F.3d at 511.

16

[Vance's] testimony, could have reached a different determination," and remand is not warranted. See Stout, 454 F.3d at 1056.

## VIII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 6, 2012

                                                             /S/_____
                                                          SUZANNE H. SEGAL
                                                          UNITED STATES MAGISTRATE JUDGE